UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVE AL-HUDA SCHOOL FOUNDATION, | No. C 09-05665 MHP |
| Appellant, | |
| v. | **MEMORANDUM & ORDER** |
| ISLAMIC SOCIETY OF SAN FRANCISCO, | **Re:** Motion to Dismiss Appeal as Moot |
| Appellee. | |

Appellee Islamic Society of San Francisco ("ISSF") moves to dismiss appellant Save Al-Huda School Foundation's ("SAHSF") appeal from a judgment of the United States Bankruptcy Court of the Northern District of California. The SAHSF appealed the Bankruptcy Court's judgment in favor of appellee, the ISSF, on a motion on partial findings brought pursuant to Federal Rule of Civil Procedure 52(c). The subject property has since been sold, and the ISSF now contends that the appeal is subject to dismissal because it is moot. Having considered the parties' arguments and submissions, the court grants the motion to dismiss.

BACKGROUND

This case concerns the effort of the SAHSF to prevent the ISSF from selling certain property used as the Al-Huda School. The ISSF is a religious charitable organization, founded under California law to serve the Muslim community of San Francisco through the construction of a mosque, prayer services, education, and a wide variety of other activities. Docket No. 3 (Bankruptcy Record on Appeal), Doc. No. 15 (Findings of Fact) at ¶ 4. The SAHSF is a group formed by parents of potential students, donors, and ISSF members who oppose the sale of the

1  school property. *Id.*

2  In 1997, the ISSF purchased a parcel of land at 340 Alta Vista Drive, South San Francisco ("Property") with the intention of establishing a school there. *Id.* at ¶ 2. After several years in operation, on or around 2006, the ISSF concluded that the continued operation of the school was not economically feasible. *Id.* at ¶ 3. Shortly thereafter, the ISSF announced that it would discontinue operating the school and potentially sell the Property. *Id.* When the ISSF discontinued the school, the SAHSF was formed by a group of donors, parents who wished to send their children to the school, and ISSF members who wanted to prevent the sale of the Property. *Id.* at ¶ 4. The SAHSF recorded a lis pendens against the Property on August 31, 2006. *Id.* at ¶ 6.

In February 2007, the SAHSF sued the ISSF in San Francisco County Superior Court to enjoin the sale of the school. *Id.* at ¶ 5. In October 2007, the ISSF filed for bankruptcy, resulting in a stay of the action before the Superior Court. *Id.* at ¶ 8. Pursuant to the bankruptcy filing, on December 20, 2007, the ISSF removed the suit with SAHSF to the bankruptcy court and filed a motion to sell the Property free and clear. *Id.* at ¶¶ 9-10. The SAHSF opposed the sale, arguing that the Property could not be sold because it was subject to a charitable trust obligation. *See* Docket No. 3 (Bankruptcy Record on Appeal), Doc. No. 1 (Compl.) at ¶¶ 22-26. The SAHSF argued that the ISSF's use of the word *waqf* in soliciting donations for the establishment of the school created an implied trust giving the donors a beneficial interest in the property. *See* Findings of Fact at ¶ 13. Under Sharia law, a *waqf* is a charitable donation made for a specific purpose, such as a school or hospital, which may not be used for any other purpose, sold, or mortgaged. *Id.* The SAHSF thus asserted its alleged right to enforce the trust and prevent the ISSF from selling the school property as it sought to do in the course of its bankruptcy proceeding.

On November 10, 2009, the bankruptcy court entered judgement against the SAHSF on all causes of action, holding that the SAHSF lacked standing to enforce a trust both statutorily and at common law, and could not enjoin ISSF from selling the Property. *See* Docket No. 3 (Bankruptcy Record on Appeal), Doc. No. 16 (Judgment for Def.) at ¶¶ 1-6. On October 14, 2010, the ISSF filed its motion to approve the sale of the Property to Robert Wong and Sharon L. Cheong-Wong, free

2

1  and clear of the purported interest of SAHSF.  The bankruptcy court entered an order approving the
2  sale and finding that the Wongs were good faith purchasers on November 5, 2010.  *See* Docket No.
3  8, (Resp. Mot.), Exh. C (Order Granting Debtor's Motion to Sell Real Property).  The SAHSF did
4  not appeal the order approving the sale.
5        On November 12, 2009, the SAHSF filed its notice of appeal from the bankruptcy court's
6  judgment and its objection to referral to the Bankruptcy Appellate Panel.  In its appeal, the SAHSF
7  argued that the bankruptcy court: (1) improperly considered the ISSF's evidence in granting
8  judgment on partial findings; (2) erred in refusing to entertain the concept that the ISSF was holding
9  the Al-Huda School in a constructive trust; and (3) erred in concluding that donations were received
10 for the general charitable purposes of the ISSF rather than specifically for a school.  *See* Docket No.
11 15, Pet. at 9-14.  The SAHSF did not move for a stay of the sale pending appeal.
12       The ISSF consummated the sale of the Property to the Wongs on December 2, 2010.  Resp.
13 Mot., Exh. D. (Grant Deed).  On December 21, 2010, the ISSF filed the instant motion to dismiss the
14 SAHSF's appeal as moot.  The ISSF contends that the appeal is statutorily moot under 11 U.S.C.
15 § 363(m), equitably moot, and constitutionally moot.  The SAHSF did not submit a brief in
16 opposition to the motion to dismiss.
17
18 LEGAL STANDARD
19       Under 28 U.S.C. § 158(c)(1), this court has jurisdiction to hear appeals from final judgments
20 of the United States Bankruptcy Court for the Northern District of California.  *Sigma Micro Corp. v.*
21 *Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007).  Mootness is a
22 jurisdictional issue which the court reviews de novo.  *See Baker & Drake v. Pub. Serv. Comm'n. of*
23 *Nev.* (*In re Baker & Drake*), 35 F.3d 1348, 1351 (9th Cir. 1994).  Mootness generally precludes
24 federal courts from deciding "questions that cannot affect the rights of litigants in the cases before
25 them." *Di Giorgio v. Lee (In re Di Giorgio)*, 134 F.3d 971, 974 (9th Cir. 1998).  The heavy burden
26 of establishing that the court cannot provide any effective relief falls on the party asserting
27 mootness.  *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't. of*
28

3

*Energy*, 232 F.3d 1300, 1303 (9th Cir. 2000).  If a case becomes moot on appeal, the court is required to dismiss it.  *See Defresne v. Veneman*, 114 F.3d 952 (9th Cir. 1997) (*citing Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997)).

DISCUSSION

I.  Bankruptcy Appeals and Mootness

An appeal is rendered moot when events occur that prevent an appellate court from granting effective relief.  *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1423 (9th Cir. 1985).  The policy behind the mootness rule in bankruptcy is to protect a good faith purchaser of property by ensuring finality in orders regarding stays.  *Onouli-Kona Land Co. v. Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988).  The mootness rule is partially codified in 11 U.S.C. § 363(m), which provides that a property sale to a good faith purchaser cannot be invalidated on appeal if the sale was not stayed during the pendency of the appeal.  In the context of bankruptcy proceedings, "Congress has taken extraordinary measures to encourage purchases and loans. . . by [] foreclosing appeal" of completed transactions conducted in good faith.  1 Epstein, Nichols & White, Bankruptcy §§ 4-17 at 431 (1992).

Besides the statutory variety, mootness in bankruptcy appeals comes in two other "flavors:" constitutional and equitable.  *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (B.A.P. 9th Cir. 2008).  Constitutional mootness requires the impossibility of the court's granting relief for lack of a live case and controversy.  *See DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974); *Luckie v. EPA*, 752 F.2d 454, 457 (9th Cir. 1985); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).  Equitable mootness inquires beyond the impossibility of a remedy and considers the consequences of a reversal on third parties who acted in reliance on an order authorizing a sale.  *In re PW, LLC*, 391 B.R. at 33.

The ISSF argues that the SAHSF's appeal should be dismissed as statutorily, equitably, and constitutionally moot.  It contends that the appeal is statutorily moot because the SAHSF failed to obtain a stay of the bankruptcy court's order approving the sale of the property to good faith

4

1  purchasers.  The ISSF also argues that the appeal is equitably moot because the SAHSF cannot
2  enforce its purported charitable trust against the purchasers, and the *lis pendens* the SAHSF recorded
3  does not function as a stay of the sale.  Finally, the ISSF contends that the appeal should be
4  dismissed as constitutionally moot because this court is not able to grant effective relief from the
5  bankruptcy court's order.  The SAHSF failed to submit a reply to ISSF's motion to dismiss.  For the
6  reasons stated below, the SAHSF's appeal is not statutorily moot because section 363(m) of the
7  Bankruptcy Code does not apply to the SAHSF's appeal.  The appeal is, however, equitably and
8  constitutionally moot.

A.   Statutory Mootness

The Bankruptcy Code codifies the policy of equitable mootness by ensuring the finality of a sale in the absence of a stay of the order approving a sale pending an appeal.  Unlike equitable mootness, however, the code "provides for specific procedures and findings in order to provide certainty for sales.  Section 363(m) states:

> "[t]he reversal or modification on appeal of *an authorization* under subsection (b) or (c)[1] of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

(emphasis added).  The Ninth Circuit has held that "[section] 363[(m)] by its terms applies only 'to an authorization under subsection (b) or (c) of this section.'"  *In re PW, LLC*, 391 B.R. at 35.  Statutory mootness under the Bankruptcy Code, then, is limited by the statutory language.  The SAHSF's appeal pleads for reversal of the bankruptcy court's judgment and remand for a new trial on the substantive issue of the SAHSF's standing to enforce the ISSF's purported charitable trust.  It does not seek an appeal from the bankruptcy court's authorization of a sale of property as specifically referenced in the statute.  Section 363(m), by its terms, does not apply to the SAHSF's appeal and the appeal is therefore not statutorily moot.

For practical purposes, however, the SAHSF's appeal functions as an appeal of the order approving the sale of the Property, as the court can see no reason for the SAHSF to seek standing to

5

enforce the purported charitable trust if not to plead for the continued operation of the school at the Property under the ISSF's ownership. The SAHSF's appeal from the entire judgment of the bankruptcy court must therefore confront the issue of equitable and constitutional mootness.

B.     Equitable Mootness

Equitable mootness inquires beyond the impossibility of a remedy and considers the consequences of a reversal on third parties who acted in reliance on an order authorizing a sale. *In re PW, LLC*, 391 B.R. at 33. The equitable mootness doctrine applies regardless of whether a purchaser has taken irreversible steps following the sale. *In re Onouli-Kona Land Co.*, 846 F.2d at 1172. The policy behind this rule in bankruptcy is to protect a good faith purchaser of property by ensuring the finality of the transaction. *Id*. "Finality in bankruptcy has become the dominant rationale for [the Ninth Circuit's] decisions; the trend is towards an absolute rule that requires appellants to obtain a stay before appealing a sale of assets." *Id.* (*citing Sun Valley Ranches, Inc. v. Equitable Life Assurance Soc'y of the United States* (*In re Sun Valley, Inc.*), 823 F.2d 1373, 1375 (9th Cir. 1987)). An appeal becomes equitably moot when the "'[appellant has] failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court,' thus 'permitt[ing] such a comprehensive change of circumstances to occur as to render it inequitable. . . to consider the merits of the appeal." *Focus Media v. NBC, et al. (In re Focus Media, Inc.)*, 378 F.3d 916, 923 (alterations in original) (*quoting Trone v. Roberts Farms (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981)).

A prerequisite to the application of the equitable mootness doctrine in particular instances, then, is the existence of a good faith purchaser who acted in reliance on an order authorizing a bankruptcy debtor's property to the good faith purchaser. In this case, the Wongs were found by the bankruptcy court to be good faith purchasers, and the Wongs paid for the Property in full on December 2, 2010. *See* Grant Deed. The Wongs were never party to the ISSF's bankruptcy action nor to the SAHSF's present appeal, so the narrow exception to the equitable mootness rule identified in *Onouli-Kona* does not apply, and in any event, the SAHSF has not asserted any statutory right of

6

1  redemption of the property. Furthermore, the SAHSF did not obtain or attempt to obtain a stay of
2  the sale pending appeal, thus "fail[ing] and neglect[ing] diligently to pursue [its] available remedies
3  to obtain a stay of the objectionable orders of the Bankruptcy Court." *In re Focus Media, Inc.*, 378
4  F.3d 916, 923 (9th Cir. 2004) (alterations in original) (*quoting In re Roberts Farms, Inc.*, 378 F.3d
5  916, 923 (9th Cir. 1981)). In the absence of a stay, the Wongs relied on the finality of the order
6  authorizing the sale in good faith. Allowing the SAHSF's appeal to proceed creates a threat of
7  invalidating a consummated sale, which directly contradicts the vibrant policy of finality embodied
8  in the equitable mootness doctrine. It is therefore inequitable to consider the merits of the SAHSF's
9  appeal.

11  C.   Constitutional Mootness
12     Constitutional mootness derives from constitutional limitations on the federal court to decide
13  only live cases and controversies. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974); *Luckie v. EPA*,
14  752 F.2d 454, 457 (9th Cir. 1985). In order for a live case or controversy to exist, the parties must
15  have an actual interest in the outcome of the litigation. *Ellis v. Brotherhood of Ry., Airline & S.S.*
16  *Clerks, Freight Handlers, Exp. & Station Employees*, 466 U.S. 435, 442 (1984). "If an event occurs
17  while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief
18  whatever' to a prevailing party, the appeal must be dismissed." *Church of Scientology*, 506 U.S. at
19  12 (*quoting Mills v. Green*, 159 U.S. 651, 653 (1895)). The Ninth Circuit has held that one such
20  "event" is the sale of a debtor's property to a non-party when the relief sought in the appeal is a
21  return of the property. *National Mass Media Telecommunication Systems, Inc. v. Stanley*, 152 F.3d
22  1178, 1180 (9th Cir. 1998); *see also Fultz v. Rose*, 833 F.2d 1380, 1380 (9th Cir. 1988); *Holloway v.*
23  *United States*, 789 F.2d 1372, 1374 (9th Cir. 1986).
24     In the instant case, the Property, which the SAHSF contends is subject to a charitable trust
25  restricting its use as an Islamic school, has been sold to a non-party to the appeal. Even if the
26  SAHSF were to prevail at a new trial, it would be impossible for the court to fashion "any effectual
27  relief." A ruling that the SAHSF possesses a beneficiary interest in the Al-Huda School will not

7

effect a return of the Property to the ISSF.  The court is therefore "powerless to undo what has already been done," and the SAHSF's appeal is constitutionally moot.  *See In re Focus Media, Inc.*, 378 F.3d at 922.

The singular exception to the general mootness rule, like constitutional mootness, relates to the court's inability to fashion relief.  *See In re Onouli-Kona Land Co.*, 846 F.2d at 1172.  The exception is available "when real property is sold to a creditor who is a party to the appeal, but only when the sale is subject to statutory rights of redemption."  *Id.* at 1173.  In the instant case, the sale of the Property does not fall into this narrow exception for two reasons.  First, the Wongs were never creditor parties to the SAHSF's appeal and the court is therefore no longer able to grant any effective relief.  *See Fultz*, 833 F.2d at 1380.  Second, even if the Wongs were parties to the appeal, the lis pendens recorded by the SAHSF against the Property does not create a statutory right of redemption.  Under federal law, a filing of a lis pendens does not preserve any rights after the property is sold if the debtor fails to obtain a stay of the sale.  *In re Onouli-Kona Land Co.*, 846 F.2d at 1174-75.  "[A] sale made after the expiration of the stay cannot be reversed.  If the lis pendens had force despite the expiration of the stay, the effect would be to allow an ex parte procedure to take precedence over federal bankruptcy law."  *Wood v. Walker-Pinkston Companies, Inc. (In re the Brickyard)*, 735 F.2d at 1158, *implicitly overruled on other grounds by Miyao v. Kuntz (In re Sweet Transfer & Storage), Inc.*, 896 F.2d 1189 (1990).  Thus, the SAHSF's recording of a lis pendens against the Property does not serve as a basis to undo the sale.  *See id.*

CONCLUSION

The SAHSF's appeal from the bankruptcy court's judgment is constitutionally and equitably moot. It is therefore dismissed with prejudice.

IT IS SO ORDERED.

Dated:  February 15, 2011

MARILYN HALL PATEL
United States District Court Judge

8

Northern District of California

## **ENDNOTES**

1. 11 U.S.C. § 363(b) reads in relevant part: (1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of a personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless– (A) such sale or such lease is consistent with such policy.  Section 363(c) reads in relevant part: (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.